## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| PAUL PARSHALL, Individually and On Behalf of All Others Similarly Situated, | ) ) ) | |
| Plaintiff, | ) ) | Case No. _____ |
| v. | ) ) | JURY TRIAL DEMANDED |
| COASTWAY BANCORP, INC., MARK E. CREVIER, DEBRA M. PAUL, WILLIAM A. WHITE, DENNIS M. MURPHY, JAMES P. FIORE, LYNDA DICKINSON, PHILLIP KYDD, DAVID P. DISANTO, MALCOLM G. CHACE JR., and ANGELO P. LOPRESTI II, | ) ) ) ) ) ) ) ) | CLASS ACTION |
| Defendants. | ) | |

## COMPLAINT FOR VIOLATION OF THE SECURITIES EXCHANGE ACT OF 1934

Plaintiff, by his undersigned attorneys, for this complaint against defendants, alleges upon personal knowledge with respect to himself, and upon information and belief based upon, *inter alia*, the investigation of counsel as to all other allegations herein, as follows:

## NATURE OF THE ACTION

1. This action stems from a proposed transaction announced on March 14, 2018 (the "Proposed Transaction"), pursuant to which Coastway Bancorp, Inc. ("Coastway" or the "Company") will be acquired by HarborOne Bancorp, Inc. ("Parent") and Parent's wholly-owned subsidiary, Massachusetts Acquisitions, LLC ("Merger Sub," and together with Parent, "HarborOne").

2. On March 14, 2018, Coastway's Board of Directors (the "Board" or "Individual Defendants") caused the Company to enter into an agreement and plan of merger (the "Merger Agreement") with HarborOne. Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Coastway's shareholders and is completed, Coastway's shareholders

will receive $28.25 in cash for each share of Coastway common stock they own.

3.      On April 25, 2018, defendants filed a proxy statement (the "Proxy Statement") with the United States Securities and Exchange Commission ("SEC") in connection with the Proposed Transaction.

4.      The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.  Accordingly, plaintiff alleges herein that defendants violated Sections 14(a) and 20(a) of the Securities Exchange Act of 1934 (the "1934 Act") in connection with the Proxy Statement.

## JURISDICTION AND VENUE

5.      This Court has jurisdiction over the claims asserted herein pursuant to Section 27 of the 1934 Act because the claims asserted herein arise under Sections 14(a) and 20(a) of the 1934 Act and Rule 14a-9.

6.      This Court has jurisdiction over defendants because each defendant is either a corporation that conducts business in and maintains operations within this District, or is an individual with sufficient minimum contacts with this District so as to make the exercise of jurisdiction by this Court permissible under traditional notions of fair play and substantial justice.

7.      Venue is proper under 28 U.S.C. § 1391(b) because a substantial portion of the transactions and wrongs complained of herein occurred in this District.

## PARTIES

8.      Plaintiff is, and has been continuously throughout all times relevant hereto, the owner of Coastway common stock.

9.      Defendant Coastway is a Maryland corporation and maintains its headquarters at One Coastway Blvd., Warwick, Rhode Island 02886.  Coastway's common stock is traded on the

NasdaqCM under the ticker symbol "CWAY."

10.     Defendant Mark E. Crevier ("Crevier") is the Chairman of the Board of Coastway.

11.     Defendant Debra M. Paul ("Paul") is a director of Coastway.

12.     Defendant William A. White ("White") is a director, and the President and Chief Executive Officer ("CEO") of Coastway.

13.     Defendant Dennis M. Murphy ("Murphy") is a director of Coastway.

14.     Defendant James P. Fiore ("Fiore") is a director of Coastway.

15.     Defendant Lynda Dickinson ("Dickinson") is a director of Coastway.

16.     Defendant Phillip Kydd ("Kydd") is a director of Coastway.

17.     Defendant David P. DiSanto ("DiSanto") is a director of Coastway.

18.     Defendant Malcolm G. Chace Jr. ("Chace") is a director of Coastway.

19.     Defendant Angelo P. Lopresti II ("Lopresti") is a director of Coastway.

20.     The defendants identified in paragraphs 10 through 19 are collectively referred to herein as the "Individual Defendants."

## CLASS ACTION ALLEGATIONS

21.     Plaintiff brings this action as a class action on behalf of himself and the other public stockholders of Coastway (the "Class").  Excluded from the Class are defendants herein and any person, firm, trust, corporation, or other entity related to or affiliated with any defendant.

22.     This action is properly maintainable as a class action.

23.     The Class is so numerous that joinder of all members is impracticable.  As of March 14, 2018, there were approximately 4,386,351 shares of Coastway common stock outstanding, held by hundreds, if not thousands, of individuals and entities scattered throughout

the country.

24.     Questions of law and fact are common to the Class, including, among others: (i) whether defendants violated the 1934 Act; and (ii) whether defendants will irreparably harm plaintiff and the other members of the Class if defendants' conduct complained of herein continues.

25.     Plaintiff is committed to prosecuting this action and has retained competent counsel experienced in litigation of this nature.  Plaintiff's claims are typical of the claims of the other members of the Class and plaintiff has the same interests as the other members of the Class.  Accordingly, plaintiff is an adequate representative of the Class and will fairly and adequately protect the interests of the Class.

26.     The prosecution of separate actions by individual members of the Class would create the risk of inconsistent or varying adjudications that would establish incompatible standards of conduct for defendants, or adjudications that would, as a practical matter, be dispositive of the interests of individual members of the Class who are not parties to the adjudications or would substantially impair or impede those non-party Class members' ability to protect their interests.

27.     Defendants have acted, or refused to act, on grounds generally applicable to the Class as a whole, and are causing injury to the entire Class.  Therefore, final injunctive relief on behalf of the Class is appropriate.

## SUBSTANTIVE ALLEGATIONS

### *Background of the Company and the Proposed Transaction*

28.     Coastway owns 100% of the common stock of Coastway Community Bank ("Coastway Bank").  On January 14, 2014, the Company completed its initial public offering

("IPO") of common stock in connection with the mutual-to-stock conversion of Coastway Bancorp, MHC, selling 4,827,125 shares of common stock at $10.00 per share and raising $48.3 million of gross proceeds. Since the completion of the IPO, the Company has not engaged in any significant business activity other than owning the common stock of and having deposits in Coastway Bank. At December 31, 2017, Coastway had total consolidated assets of $738.9 million, total consolidated deposits of $477.0 million, and total consolidated stockholders' equity of $71.3 million.

29. Coastway Bank is a Rhode Island chartered savings bank headquartered in Warwick, Rhode Island. Coastway Bank was originally organized in 1920 as the Telephone Workers Credit Union, a Rhode Island credit union, and later changed its name to "Coastway Credit Union." In 2000, Coastway Credit Union merged with Ocean State Community Credit Union, also located in Rhode Island. In 2009, Coastway Credit Union converted to a Rhode Island chartered mutual savings bank and changed its name to "Coastway Community Bank." In 2013, it reorganized into the mutual holding company structure by forming Coastway Bancorp, MHC, a Rhode Island chartered mutual holding company that was eliminated in January 2014 when Coastway completed the IPO.

30. Coastway Bank provides financial services to individuals, families, and businesses throughout Rhode Island from its nine banking offices located in Providence County and Kent County, Rhode Island. Coastway Bank's principal business consists of attracting retail deposits from the general public in its market area and investing those deposits, together with funds generated from operations and borrowings, in one- to four-family residential real estate loans, home equity loans and lines of credit, commercial real estate loans, U.S. Small Business Administration ("SBA") loans and, to a lesser extent, commercial business loans, commercial

construction loans and consumer loans.  Coastway Bank sells in the secondary market the majority of the fixed-rate conforming one- to four-family residential real estate loans that it originates, and depending on market conditions, it may also sell the guaranteed portions of SBA loans that it originates.  Coastway Bank offers a variety of deposit accounts to consumers and small businesses, including certificate of deposit accounts, savings accounts, demand deposit accounts, money market accounts, and club accounts.  It utilizes national market certificates of deposit and advances from the Federal Home Loan Bank of Boston both to fund loan growth and for additional liquidity. It also offers online and mobile banking services.

31.    On March 14, 2018, the Individual Defendants caused the Company to enter into the Merger Agreement with HarborOne.

32.    Pursuant to the terms of the Merger Agreement, if the Proposed Transaction is approved by Coastway's shareholders and completed, Merger Sub will merge with and into Coastway, and, immediately thereafter, Coastway will merge with and into Parent.  As a result of the Proposed Transaction, Coastway's shareholders will receive $28.25 in cash for each share of Coastway common stock they own.

33.    According to the press release announcing the Proposed Transaction:

HarborOne Bancorp, Inc. ("HarborOne")(NASDAQ: HONE) and Coastway Bancorp, Inc. ("Coastway") (NASDAQ: CWAY) today announced that they have entered into a definitive agreement under which HarborOne will acquire Coastway in an all cash transaction valued at approximately $125.6 million. Coastway stockholders will receive $28.25 for each share of Coastway common stock. The transaction has been unanimously approved by the boards of directors of both companies.

Coastway, the holding company of Coastway Community Bank, is headquartered in Warwick, Rhode Island. With 9 branches in the greater Providence area, as well as 3 mortgage lending offices, Coastway has $739 million in assets and deposits of $477 million as of December 31, 2017. The combined company will be the 12th largest publicly-traded New England community bank based on total assets, with 65 locations serving individuals and business across Massachusetts,

Rhode Island, New Hampshire and Maine. The combined company will be positioned to be a major mortgage lender in New England, and the number one mortgage lender in Rhode Island. . . .

The transaction is expected to close in the second half of 2018 and is subject to customary closing conditions, including the approval of the stockholders of Coastway and required regulatory approvals.

***The Proxy Statement Omits Material Information, Rendering It False and Misleading***

34.     Defendants filed the Proxy Statement with the SEC in connection with the Proposed Transaction.

35.     The Proxy Statement omits material information with respect to the Proposed Transaction, which renders the Proxy Statement false and misleading.

36.     The Proxy Statement omits material information regarding the Company's financial projections and the valuation analysis performed by the Company's financial advisor in connection with the Proposed Transaction, Sandler O'Neill & Partners, L.P. ("Sandler").

37.     When a banker's endorsement of the fairness of a transaction is touted to shareholders, the valuation methods used to arrive at that opinion as well as the key inputs and range of ultimate values generated by those analyses must also be fairly disclosed.  Moreover, the disclosure of projected financial information is material because it provides stockholders with a basis to project the future financial performance of a company, and allows stockholders to better understand the financial analyses performed by the company's financial advisor in support of its fairness opinion.

38.     With respect to Sandler's Comparable Company Analysis and Analysis of Selected Merger Transactions, the Proxy Statement fails to disclose the individual multiples and financial metrics for each of the companies and transactions observed by Sandler in its analyses. The omission of this information is material because Sandler did not perform a typical

comparable company analysis or precedent transactions analysis by selecting a range of trading multiples based on the selected companies and transactions, and then applying the selected trading multiples to the target's relevant financial statistics to generate implied values of the target company. Instead, Sandler merely compared the median, mean, low, and high financial data of the selected "peer" companies and precedent transactions to Coastway's data, thus defeating the purpose of the analyses. The failure to disclose the individual multiples and financial metrics of the selected companies and transactions therefore was a material omission and renders the Proxy Statement materially misleading by wrongly implying that Sandler's analyses support the fairness of the merger consideration.

39.     With respect to Sandler's Net Present Value Analysis, the Proxy Statement fails to disclose: (i) Sandler's basis for selecting terminal earnings multiples of 10.0x to 18.0x and terminal tangible book value multiples of 100% to 160%; (ii) the perpetuity growth rates implied by Sandler's analyses; and (iii) the specific inputs and assumptions underlying the discount rates of 11.5% to 15.5% selected by Sandler.

40.     The failure to disclose Sandler's basis for selecting terminal earnings multiples of 10.0x to 18.0x and terminal tangible book value multiples of 100% to 160% is a material omission because it appears that Sandler selected lower terminal exit multiples to drive the implied value of the Company downward. Relatedly, the perpetuity growth rates implied by Sandler's analyses would provide stockholders with a sensitivity analysis that would allow stockholders to observe the propriety of using Sandler's selected terminal multiples, and therefore the failure to disclose the implied perpetuity growth rates was a material omission.

41.     Further, the Proxy Statement merely indicates that Sandler selected its discount rate range "to reflect different assumptions regarding required rates of return of holders or

prospective buyers of Coastway Bancorp common stock." The failure to disclose the specific inputs and assumptions underlying the discount rates selected by Sandler was a material omission, because the Proxy Statement suggests that the Company's stockholders had a rate of return of 11.5% to 15.5% on their stock. This rate of return is notably high, particularly in light of the fact that Coastway has never paid cash dividends to its stockholders.

42.    Sandler's use of low terminal multiples and high discount rates results in lower implied values of the Company derived from Sandler's Net Present Value Analysis. The material omissions cause the Proxy Statement to be misleading because defendants have relied upon and touted Sandler's fairness opinion, and have encouraged stockholders to vote in favor of the Proposed Transaction. If the omitted information is disclosed, stockholders could observe the fallacy of Sandler's valuation analyses, which could cause stockholders to vote against the Proposed Transaction.

43.    The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Opinion of Coastway Bancorp's Financial Advisor; and (ii) Certain Prospective Financial Information Provided by Coastway Bancorp.

44.    The Proxy Statement omits material information relating to potential conflicts of interest of Sandler. Due to the central role played by investment banks in the evaluation, exploration, selection, and implementation of strategic alternatives, stockholders are entitled to the full disclosure of investment banker compensation and all potential conflicts of interest.

45.    The Proxy Statement indicates that "Sandler O'Neill provided investment banking services to, and received fees from HarborOne Bancorp in the two years preceding the date of its opinion." In particular, in 2016, "in connection with HarborOne Bancorp's reorganization into a

two-tier mutual holding company structure, Sandler O'Neill was retained by HarborOne Bancorp to manage the subscription offering and community offering and to also perform records management services in connection therewith."

46.     The Proxy Statement, however, fails to disclose the amount of fees Sandler earned from Parent in connection with those services.  This omission is material because, without this information, stockholders cannot assess the magnitude of Sandler's potential conflict of interest. This omission causes the Proxy Statement to be misleading because if Sandler does suffer from a conflict of interest, Sandler would be incentivized to skew its valuation analyses downward to support the fairness of the merger consideration.

47.     The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; and (ii) Opinion of Coastway Bancorp's Financial Advisor.

48.     The Proxy Statement omits material information relating to the background leading to the Proposed Transaction and potential conflicts of interest of the Company's named executive officers.  The Company's stockholders are entitled to an accurate description of the process the directors used in coming to their decision to support the Proposed Transaction, and any potential conflicts of interest of Company management or Board members that could have had an impact on their decision to pursue and approve the Proposed Transaction.

49.     The Proxy Statement states that, on September 8, 2017, "Coastway Bancorp and Company A entered into a nondisclosure agreement that contained customary standstill provisions."  Defendants, however, failed to disclose whether the nondisclosure agreement with Company A also contains a "don't ask, don't waive" provision that prevents Company A from requesting a waiver of the standstill provision.  Notably, the Board agreed to Section 6.5(d) of

the Merger Agreement, which provides that the Company shall not "release or permit the release

of any Person from, or to waive or permit the waiver or termination of any provision of, any

standstill or similar agreement to which any of the Company or any Subsidiary of the Company

is a party."

50.     If Company A's nondisclosure agreement does contain a "don't ask, don't waive"

provision, the Proxy Statement is misleading in that it leads stockholders to believe that

Company A, which submitted an all-cash offer to acquire the Company, is still free to submit a

superior offer to acquire Coastway.   Stockholders would find this information material in

deciding whether the all-cash Proposed Transaction with HarborOne is the best transaction that

the Board could have obtained.

51.     Further, the Proxy Statement states that, on January 11, 2018, a representative

from Sandler discussed with the Board the reasons that Company C, Company D and Company

E declined to submit a proposal, but the Proxy Statement fails to disclose the reasons those

companies declined to submit an acquisition proposal to the Company.

52.     The Proxy Statement states that, in connection with the Proposed Transaction,

Parent has offered continued employment to certain of the Company's named executive officers,

including White, Jana Planka, Stephen Gibbons, and Suzanne Fry.   Although the Proxy

Statement provides some information regarding the discussions regarding these post-merger

employment opportunities, it fails to disclose when Parent first indicated to the Company or its

representatives that it would be interested in retaining certain of the Company's management

following the close of the Proposed Transaction.   The disclosure of this information is necessary

because these discussions or overtures occurred during the negotiations over the merger terms.

Stockholders are entitled to this information, because promises of future employment and its

resulting economic benefits could cause members of management to agree to a lower merger consideration, or steer the Company towards their favored bidder and against other interested parties to the detriment of the Company's stockholders.

53. Additionally, the Proxy Statement indicates that, on January 25, 2018, the Board established a Strategic Committee consisting of directors Crevier, Kydd, and Lopresti, but that Crevier was subsequently replaced by DiSanto. The Proxy Statement fails to disclose when Crevier was replaced, and the reason Crevier was replaced, including whether it was due to any perceived conflicts of interest.

54. The omission of this material information renders the Proxy Statement false and misleading, including, *inter alia*, the following sections of the Proxy Statement: (i) Background of the Merger; and (ii) Financial Interests of Directors and Executive Officers in the Merger.

55. The above-referenced omitted information, if disclosed, would significantly alter the total mix of information available to the Company's stockholders.

## COUNT I

### Claim for Violation of Section 14(a) of the 1934 Act and Rule 14a-9 Promulgated Thereunder Against the Individual Defendants and Coastway

56. Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

57. The Individual Defendants disseminated the false and misleading Proxy Statement, which contained statements that, in violation of Section 14(a) of the 1934 Act and Rule 14a-9, in light of the circumstances under which they were made, omitted to state material facts necessary to make the statements therein not materially false or misleading. Coastway is liable as the issuer of these statements.

58. The Proxy Statement was prepared, reviewed, and/or disseminated by the Individual Defendants. By virtue of their positions within the Company, the Individual

Defendants were aware of this information and their duty to disclose this information in the Proxy Statement.

59.     The Individual Defendants were at least negligent in filing the Proxy Statement with these materially false and misleading statements.

60.     The omissions and false and misleading statements in the Proxy Statement are material in that a reasonable stockholder will consider them important in deciding how to vote on the Proposed Transaction.   In addition, a reasonable investor will view a full and accurate disclosure as significantly altering the total mix of information made available in the Proxy Statement and in other information reasonably available to stockholders.

61.     The Proxy Statement is an essential link in causing plaintiff and the Company's stockholders to approve the Proposed Transaction.

62.     By reason of the foregoing, defendants violated Section 14(a) of the 1934 Act and Rule 14a-9 promulgated thereunder.

63.     Because of the false and misleading statements in the Proxy Statement, plaintiff and the Class are threatened with irreparable harm.

## COUNT II

### Claim for Violation of Section 20(a) of the 1934 Act
### Against the Individual Defendants

64.     Plaintiff repeats and realleges the preceding allegations as if fully set forth herein.

65.     The Individual Defendants acted as controlling persons of Coastway within the meaning of Section 20(a) of the 1934 Act as alleged herein.   By virtue of their positions as officers and/or directors of Coastway and participation in and/or awareness of the Company's operations and/or intimate knowledge of the false statements contained in the Proxy Statement, they had the power to influence and control and did influence and control, directly or indirectly,

the decision making of the Company, including the content and dissemination of the various statements that plaintiff contends are false and misleading.

66.     Each of the Individual Defendants was provided with or had unlimited access to copies of the Proxy Statement alleged by plaintiff to be misleading prior to and/or shortly after these statements were issued and had the ability to prevent the issuance of the statements or cause them to be corrected.

67.     In particular, each of the Individual Defendants had direct and supervisory involvement in the day-to-day operations of the Company, and, therefore, is presumed to have had the power to control and influence the particular transactions giving rise to the violations as alleged herein, and exercised the same.  The Proxy Statement contains the unanimous recommendation of the Individual Defendants to approve the Proposed Transaction.  They were thus directly involved in the making of the Proxy Statement.

68.     The Individual Defendants also had direct supervisory control over the composition of the Proxy Statement and the information disclosed therein, as well as the information that was omitted and/or misrepresented in the Proxy Statement.

69.     By virtue of the foregoing, the Individual Defendants violated Section 20(a) of the 1934 Act.

70.     As set forth above, the Individual Defendants had the ability to exercise control over and did control a person or persons who have each violated Section 14(a) of the 1934 Act and Rule 14a-9, by their acts and omissions as alleged herein.  By virtue of their positions as controlling persons, these defendants are liable pursuant to Section 20(a) of the 1934 Act.  As a direct and proximate result of defendants' conduct, plaintiff and the Class are threatened with irreparable harm.

## PRAYER FOR RELIEF

**WHEREFORE**, plaintiff prays for judgment and relief as follows:

A.     Preliminarily and permanently enjoining defendants and all persons acting in concert with them from proceeding with, consummating, or closing the Proposed Transaction;

B.     In the event defendants consummate the Proposed Transaction, rescinding it and setting it aside or awarding rescissory damages;

C.     Directing the Individual Defendants to disseminate a Proxy Statement that does not contain any untrue statements of material fact and that states all material facts required in it or necessary to make the statements contained therein not misleading;

D.     Declaring that defendants violated Sections 14(a) and/or 20(a) of the 1934 Act, as well as Rule 14a-9 promulgated thereunder;

E.     Awarding plaintiff the costs of this action, including reasonable allowance for plaintiff's attorneys' and experts' fees; and

F.     Granting such other and further relief as this Court may deem just and proper.

## JURY DEMAND

**PLAINTIFF DEMANDS A JURY TRIAL ON ALL COUNTS**

PAUL PARSHALL, Individually and On
Behalf of All Others Similarly Situated
By and through his attorneys,

HOULIHAN, MANAGHAN, MORRISSEY &
KYLE, LTD


/s/ Keith B. Kyle, Esq.  #3876
     195 Broadway, 2nd floor
     Newport, RI 02840
     (401) 846-7777
     (401) 848-7141 *facsimile*
     *keith@hmandklaw.com*


DATED: May 24, 2018